**KOHL'S FOOD STORES, INC.,**
**Plaintiff–Appellant,**

v.

**Dennis HYLAND, Defendant–Appellee.**

No. 93–3121.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1994.

Decided Aug. 10, 1994.

Patrick R. Russell, Otjen, Vanert, Stangle, Lieb & Weir, Milwaukee, WI (argued), for Kohl's Food Stores, Inc.

Jennifer Sloan Lattis, Asst. Atty. Gen., Madison, WI, for State of Wis.

Robert R. Studt, Laura L. Salerno (argued), Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, WI, for Dennis Hyland.

Before COFFEY and FLAUM, Circuit Judges, and MORAN, Chief District Judge.*

FLAUM, Circuit Judge.

In this case, Kohl's Food Stores, Inc., requested federal declaratory and injunctive relief from an order of the Wisconsin Labor and Industry Review Commission ("Commission") which, under the Wisconsin Worker's Compensation Act ("Wisconsin Act"), had awarded Dennis Hyland relief for Kohl's unlawful failure to rehire Hyland. On cross

---

* The Honorable James B. Moran, Chief District Judge for the Northern District of Illinois, sitting by designation.

motions for summary judgment the district court held in favor of Hyland. We affirm.

## I. Background

This case developed from a labor dispute between Hyland and Kohl's. A Wisconsin administrative law judge determined that Kohl's had violated § 102.35(3) of the Wisconsin Act by refusing, without a legitimate justification, to rehire Hyland for his old job. Throughout the administrative hearing and its later appeal before the Commission Kohl's maintained that the Wisconsin Act was preempted by § 301 of the Federal Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185. Unpersuaded, the Commission agreed that Kohl's had unreasonably refused to reinstate Hyland to his previous job and confirmed Hyland's award of $30,000. In response, Kohl's commenced this federal action (originally against both the State of Wisconsin and Hyland) in the Western District of Wisconsin seeking a declaratory judgment. *See* 28 U.S.C. § 2201. Kohl's argued that Hyland's cause of action under the Wisconsin Act was preempted by § 301 of the LMRA because it supposedly requires an interpretation of the collective bargaining agreement ("Agreement"). The district court denied Kohl's motion for summary judgment, and granted Hyland's cross motion. For the following reasons we affirm the district court.

## II. Discussion

The Supremacy Clause of Art. VI of the Constitution of the United States grants to Congress the power to preempt state law. *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824). In the area of labor relations specifically, Congress has exercised this power by enacting section 301 of LMRA which states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parities...." 29 U.S.C. § 185(a). The Supreme Court has determined that "a state law that purports to define the meaning or scope of a term in a contract suit is preempted by federal labor law." *see Allis–*

*Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). In *Lingle v. Norge,* the Court then clarified its position, holding that state law is preempted only if the law depends upon interpreting the meaning of the collective bargaining agreement. 486 U.S. 399, 406, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988); *see also Hawaiian Airlines, Inc., v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2246–48, 129 L.Ed.2d 203 (1994) (holding that under the Railway Labor Act the preemption standard "—that a state-law cause of action is not preempted ... if it involves rights and obligations that exist independent of the collective bargaining agreement–is virtually identical to the preemption standard the Court employs in cases involving § 301 of the LMRA") (citations omitted).

Hyland's cause of action arises under Wis.Stats. § 102.35(3), which has given employees a statutory entitlement to be rehired after an on-the-job injury:

> Any employer who without reasonable cause refuses to rehire an employee who is injured in the course of employment, where suitable employment is available within the employee's physical and mental limitations, upon order of the department and in addition to other benefits, has exclusive liability to pay to the employee the wages lost during the period of such refusal, not exceeding one year's wages. In determining the availability of suitable employment the continuance in business of the employer shall be considered and any collective bargaining agreement with respect to seniority shall govern.

In applying this statute to Hyland's case we follow the reasoning of the state courts. *Universal Foods Corp. v. LIRC,* set out the following two-phase burden shifting analysis for an alleged § 102.35(3) violation:

> To establish employer liability under sec. 102.35(3), Stats., the employee has the burden of showing: (1) that she was an employee; (2) that has sustained a compensable injury; (3) that she applied for rehire; and, (4) that the employer refused to rehire her because of the injury. The burden then shifts to the employer to show a reasonable refusal to rehire. In order to

meet this burden, the employer must show: (1) that the employee could not do the work she applied for; and (2) that no other suitable work was available.

161 Wis.2d 1, 467 N.W.2d 793, 795 (Wis.App. 1991) (citations omitted). Evidently to the satisfaction of the Commission, Hyland had successfully shifted the burden to Kohl's under the *Universal Foods* analysis. We note that under Wisconsin's interpretation of § 102.35(3), to meet his burden the employer must show: "(1) that the employee could not do the work she applied for; *and* (2) that no other suitable work was available." *Id.* (emphasis supplied). Accordingly, if the employer fails to establish either element he has not met his § 102.35(3) burden.

The district court stated that a single factual issue of import concerns Hyland's physical ability to return to his former position as a journeyman meat cutter. The court reasoned that if Hyland was able to do the work he applied for (ie. his former job), Kohl's would fail to meet the first part its burden-shifting requirement. The district court concluded that since the resolution of Hyland's matter could be reached by answering only this purely factual question, the LMRA does not preempt his claims under § 102.35(3). This is only true, however, when this factual question is answered in one way-i.e. if Hyland in fact could do the work for which he applied. Thus, before we may conclude that § 102.35(3) is free from preemption the question remains whether the second part of *Universal Foods* test ("that no other suitable work was available") turns upon a reading of the collective bargaining agreement. In light of the Supreme Court's teachings in *Lingle*, we conclude that it does not.

In *Lingle*, the plaintiff filed a wrongful termination suit against his employer who claimed that the plaintiff had filed a false worker's compensation claim subsequent to a job-related injury. The plaintiff simultaneously pursued the grievance procedure provided under the collective bargaining agreement and a state-court action for retaliatory discharge. The district court found federal preemption (reasoning that the retaliatory discharge action was "inextricably intertwined" with the collective bargaining agreement), and this court affirmed, *Lingle*, 823 F.2d 1031 (7th Cir.1987) (*en banc*), but the Supreme Court unanimously reversed, 486 U.S. at 409, 108 S.Ct. at 1883. The Court reasoned that mere parallelism between a state law and a collective bargaining agreement does not render the state-law analysis dependent upon the contractual analysis. *Id.* at 408, 108 S.Ct. at 1883. A state rule must depend upon the meaning or scope of a term in a contract suit before it is preempted by federal labor law. *See Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882 (reasoning that mere factual questions pertaining to the conduct of either the employee or his employer do not preempt state law because the terms of the collective bargaining agreement are not implicated); *see also Allis–Chalmers*, 471 U.S. at 210, 105 S.Ct. at 1910–11. In *Allis–Chalmers* the Court had earlier opined that extending the effect of § 301 beyond suits for breach of contract would impermissibly preempt state rules that proscribe conduct or establish rights and obligations independent of a collective bargaining agreement. 471 U.S. at 212, 105 S.Ct. at 1912. The Court had also confirmed that § 301 does not grant the ability to contract out from under the requirements of state law. *See id.; see also Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 569 (7th Cir. 1989) ("[F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship.").

■ Kohl's conduct toward Hyland may have been proscribed by both state law and certain parallel provisions from the collective bargaining agreement. As we have learned from *Lingle*, the fact that the collective bargaining agreement parallels state law is not dispositive of LMRA preemption. Although Hyland may have had a choice whether to obtain redress for Kohl's alleged misconduct under either the collective bargaining agreement or state law, because his cause-of-action is founded on an independent state law that does not require an interpretation of the collective bargaining agreement, Hyland may proceed with his state suit.

■ Kohl's persistently argues that the second part of the *Universal Foods* test ap-

plying § 102.35(3) ("that no other suitable work was available") causes the Wisconsin Act to be preempted. As the argument goes, whether "suitable work" was available is a matter that necessitates an interpretation of the Agreement, triggering the LMRA and thus preempting the Wisconsin Act. We are not persuaded. By enacting Wis.Stat. § 102.35(3) Wisconsin has decided to impose a rule of entitlement on all employers within its jurisdiction. This entitlement is guaranteed to all Wisconsin employees. What constitutes "suitable work" *under the statute* has its own distinctive meaning, no matter how a collective bargaining agreement is drafted. For a state law to have any force whatsoever, its own legislature and courts must be the final arbiters as to that law's interpretation. (Were this not true parties could contractually redefine statutory language with idiosyncratic meanings designed to subvert state law.) While a collective bargaining agreement (along with the statute's plain meaning, a state's policy, the industry's practice, environmental factors, or some other indication) may lend assistance into a statutory inquiry, such an inquiry would be limited in scope to interpreting the statutory language without necessarily defining any term in the collective bargaining agreement. As Hyland's cause of action arises from a state created entitlement, independent of the rights granted under the Agreement, the district court properly concluded that federal law does not preempt the Wisconsin Act.

AFFIRMED.

MORAN, Chief District Judge, concurring.

I concur, but with one reservation. The Wisconsin statute, Wis.Stat. § 102.35(3), provides that "[i]n determining the availability of suitable employment ... any collective bargaining agreement with respect to seniority shall govern." If this case involved an employee who could not do his prior work, and if the availability of suitable employment for that employee arguably involved the interpretation of the seniority provisions of a collective bargaining agreement, then there well might be a preemption problem. But here it has been determined that the plaintiff can return to his previous position—it is unnecessary to consider whether or not other suitable work is available and, therefore, whether or not there is preemption in those circumstances.